FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

2016 JUN 10  P 4: 59

CLERK'S OFFICE
AT GREENBELT

BY_____DEPUTY

| | | |
|---|---|---|
| **WILLIAM THOMAS MCCOY,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Case No.: GJH-15-2487** |
| **PEPCO HOLDINGS, INC.,** | * | |
| *et al.,* | * | |
| **Defendants.** | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**MEMORANDUM OPINION**

In this action, pro se Plaintiff William Thomas McCoy alleges various statutory and

common law causes of action against Pepco Holdings, Inc. ("PHI"), Jack Strausman,

Joseph M. Rigby, and Frederick Boyle (collectively, "Defendants"). *See* ECF No. 1.

Presently pending before the Court is Defendants' Motion to Dismiss Plaintiff's Amended

Complaint.[1] ECF No. 12. No hearing is necessary to resolve the Motion. *See* Local Rule

105.6 (D. Md. 2014). For the reasons that follow, Defendants' Motion is granted.

**I.    BACKGROUND**

Although the Amended Complaint is not a model of clarity, at its core, this action

involves a billing dispute between Plaintiff and his purported electric company.[2] Plaintiff alleges

that, on June 15, 2015, he sent an "Electronic Funds Transfer" ("EFT") instrument via certified

---

[1] Defendants also filed Motions to Dismiss and an Amended Motion to Dismiss the original Complaint, ECF Nos. 6
& 8, but those Motions will be denied as moot in light of Plaintiff's filing of an Amended Complaint. *See* Fed. R.
Civ. P. 15(a)(1)(B).

[2] Defendants argue that PHI is not Plaintiff's electric company, but rather that it is a stockholder in Plaintiff's actual
electric provider, the Potomac Electric Power Company ("PEPCO"). They contend that PHI is therefore an
improper party to this action. On a motion to dismiss, however, the Court must treat the facts alleged in the
Amended Complaint as true, and Plaintiff alleges that PHI is the corporate entity that has caused his harm.

mail to PHI in the amount of $3,066, which, according to Plaintiff, was to discharge a debt he

owed for his electric services. *See* ECF No. 10 at ¶ 17. The EFT was a personal check that

Plaintiff endorsed as "Not For Deposit, EFT Only, For Discharge Only."[3] ECF No. 6-1 at 2.[4]

Shortly thereafter, Plaintiff received notice that the EFT instrument was not accepted because it

was "not legal tender." ECF No. 10 at ¶ 18. Plaintiff alleges that PHI has threatened to

disconnect his electric account if it does not receive legal tender. *Id.* at ¶ 28. The Amended

Complaint is not clear as to whether the EFT document was returned to him, or if it was retained

by PHI. *Compare id.* at ¶ 21 (alleging that PHI "refused the payment and returned the same to

Plaintiff"), *with id.* at ¶ 27 (alleging that PHI "never return[ed] the EFT instrument").

Plaintiff initiated this action on August 21, 2015, alleging violation of the Electronic

Fund Transfers Act ("EFTA"), 15 U.S.C. § 1693 *et seq.*, the Fair Debt Collection Practices Act

("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and the Consumer Credit Protection Act ("CCPA"), 15

U.S.C. § 1601 *et seq.*, as well as claims of fraud and conversion. *See* ECF No. 1. Rather than

answering the Complaint, Defendants filed motions to dismiss the Complaint. *See* ECF Nos. 6 &

8. Plaintiff then filed an Amended Complaint that is substantively identical to the original

Complaint.[5] *See* ECF No. 10. The same day that he filed his Amended Complaint, however,

Plaintiff also filed a response in opposition to Defendants' Motion to Dismiss the original

Complaint. ECF No. 11. Defendants now move to dismiss the Amended Complaint pursuant to

---

[3] Because the EFT instrument is "integral to and explicitly relied on in the complaint," the Court can consider the contents of that instrument without converting this Motion into one for summary judgment. *See Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004); *see also* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").

[4] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

[5] The Amended Complaint includes additional paragraphs that seem to have been inadvertently omitted from the original Complaint. *See* ECF No. 10 at ¶¶ 23–26.

Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.[6] *See* ECF No. 12.[7] Plaintiff

has not filed a response in opposition to Defendant's latest Motion,[8] but, in light of his pro se

status, the Court will consider the merits of the Motion.

## II.    DISCUSSION

### A.  Failure to Exhaust Administrative Remedies

Defendants first argue that dismissal is necessary because Plaintiff failed to exhaust

administrative remedies. ECF No. 6 at 4–7. "Motions to dismiss for failure to exhaust

administrative remedies are governed by [Federal Rule of Civil Procedure] 12(b)(1) for lack of

subject matter jurisdiction." *Clarke v. DynCorp Int'l LLC*, 962 F. Supp. 2d 781, 786 (D. Md.

2013) (alteration in original) (quoting *Khoury v. Meserve*, 268 F.Supp.2d 600, 606 (D. Md.

2003)). A motion pursuant to Rule 12(b)(1) should be granted "only if the material jurisdictional

facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Evans v.

B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999); *see also United States ex rel. Vuyyuru v.

Jadhav*, 555 F.3d 337, 347–48 (4th Cir. 2009). The plaintiff bears the burden of proving that

subject matter jurisdiction exists. *Piney Run Preservation Ass'n v. Cnty. Comm'rs of Carroll

Cnty., Md.*, 523 F.3d 453, 459 (4th Cir. 2008). When considering a Rule 12(b)(1) motion, the

court should "regard the pleadings as mere evidence on the issue, and may consider evidence

outside the pleadings without converting the proceeding to one for summary judgment." *Evans*,

166 F.3d at 647 (internal quotation marks and citation omitted).

---

[6] Defendants also move to dismiss the Amended Complaint pursuant to Rule 12(b)(5) for insufficient service of process. *See* ECF No. 6 at 7–8; ECF No. 8. Because the Court concludes that dismissal is necessary for failure to exhaust administrative remedies and for failure to state a claim, this additional argument need not be addressed.

[7] In their latest Motion to Dismiss, Defendants incorporate by reference their Motion to Dismiss the original Complaint, as well as their Amended Motion to Dismiss. *See* ECF No. 12. Accordingly, any further citations to Defendants' arguments will refer to Defendants' original Motion to Dismiss or Amended Motion to Dismiss.

[8] To the extent Defendants have incorporated arguments made in previous Motions, *see* ECF No. 12, the Court will also consider Plaintiff's response in opposition to those earlier Motions to Dismiss. ECF No. 11.

Defendants contend that the Court lacks jurisdiction to resolve this dispute because Plaintiff has failed to exhaust the administrative remedies available under the Public Utilities Article of the Maryland Code. *See* ECF No. 6 at 4–7. Pursuant to that Article, the Maryland Public Service Commission (the "Commission") has jurisdiction to supervise and regulate public service companies operating in Maryland, including electric utility companies. Md. Code Ann., Pub. Util. § 2-112. The Commission has the power to investigate consumer complaints related to utility services and enforce provisions of the Public Utilities Article. *See* Md. Code Ann., Pub. Util. §§ 2-115, 3-102.

In *Bell Atlantic of Maryland, Inc. v. Intercom Systems Corp.*, 782 A.2d 791 (Md. 2001), the Court of Appeals of Maryland addressed the issue of exhaustion of administrative remedies available before the Commission. The Court of Appeals concluded that "[w]hile comprehensive in nature, the regulatory framework of the Public Utility Companies Article is not all-encompassing so as to preempt all fora where potential claims may arise against public service companies." *Id.* at 797. In other words, claims that fall within the Commission's jurisdiction do not preempt other statutory or common law causes of action. *See id.* at 803–04 ("The design of the Public Utility Companies Article does not reflect an intent to abrogate common law causes of action brought by consumers of the services offered by public service companies."). Nevertheless, the Commission has "primary" jurisdiction over disputes with public utility companies, which means that "a claimant must invoke and exhaust the administrative remedy, and seek judicial review of an adverse administrative decision, before a court can properly adjudicate the merits of the alternative judicial remedy." *Id.* at 797; *see also id.* at 805.

In *Bell Atlantic*, the plaintiff raised claims that included a dispute over a telephone company's billing rates and alleged discriminatory pricing—issues which fall within the

4

Commission's jurisdiction. *See id.* at 806; Md. Code Ann., Pub. Util. § 2-113. The plaintiff also

asserted, among other things, a claim for compensatory and punitive damages for the telephone

company's alleged tortious interference with the plaintiff's contractual relations, but the factual

predicate of those claims involved the billing rate and discriminatory pricing issues. *Bell*

*Atlantic*, 782 A.2d at 806. The Court of Appeals noted that, "[w]hile the [Commission] may be

able to resolve portions of [the plaintiff's] dispute with [the telephone company], other

cognizable claims sounding in tort for compensatory and punitive damages arising out of the

service contracts with [the telephone company] cannot be resolved by the [Commission]." *Id.*

Thus, the Court of Appeals concluded that, in such circumstances, "a consumer must file a

complaint with the [Commission] and then may decide to file an independent judicial action.

Thereafter, the trial court must stay the independent judicial action upon the request of either

party until after final resolution of the administrative proceeding." *Id.* at 806–07. Such a

procedure "allow[s] the agency to imprint the matter with its expertise in this area of law and

public policy while also providing consumers with a forum for cognizable common law claims

for which they could not otherwise obtain adequate relief." *Id.* at 807.

 Here, as in *Bell Atlantic*, Plaintiff's statutory and common law claims involve issues that

fall within the Commission's jurisdiction, in particular, issues regarding billing disputes and

termination of services. *See* Md. Code Regs. 20.26.02.05; Md. Code Regs. 20.31.01.01 *et seq.*

Plaintiff was therefore required to initiate such a dispute with the Commission, before filing an

independent judicial action in this Court.[9] There is no allegation in the Amended Complaint

---

[9] Although Defendants suggest that this Court would never have jurisdiction to review these matters because judicial review of the administrative remedies before the Commission may only be reviewed by the Maryland Circuit Court, *see* ECF No. 6 at 6–7; *see also* Md. Code, Pub. Util. § 3-204, any such limit would only apply to the review of the legal issues that fall within the Commission's jurisdiction. The Court of Appeals of Maryland did not seem to suggest in *Bell Atlantic* that the administrative scheme would deprive federal courts of jurisdiction to adjudicate claims in an independent judicial action involving claims arising under federal law.

indicating that Plaintiff did so, and Plaintiff did not address this argument when he responded to Defendants' Motion to Dismiss the original Complaint. *See* ECF Nos. 10 & 11; *see also, e.g., Kissi v. Panzer*, 664 F. Supp. 2d 120, 123 (D.D.C. 2009) ("Because the plaintiff's opposition fails to address the defendants' arguments, the Court may treat the defendants' motion as conceded."). Although entering a stay would be appropriate if Plaintiff did initiate an action before the Commission, because Plaintiff failed to so much as invoke the available administrative remedy, dismissal is warranted. *See Bell Atlantic*, 782 A.2d at 797 (emphasis added) ("[A] claimant must *invoke and exhaust* the administrative remedy . . . before a court can properly adjudicate the merits of the alternative judicial remedy."); *cf. Grice v. Colvin*, 97 F. Supp. 3d 684, 699 (D. Md. 2015) (noting, in action under the Social Security Act, that the first element of exhaustion of administrative remedies—presentment of the claim to the agency—is nonwaivable, while the second element—exhaustion—may be waived).

### B.  Failure to State a Claim

Even if Plaintiff had presented his claim to the Commission before filing an independent judicial action raising these statutory and common law claims, the Amended Complaint would still be subject to dismissal under Rule 12(b)(6) because Plaintiff has failed to state a plausible claim for relief.

Under Rule 8(a) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). When deciding a motion to dismiss under Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint," and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations and internal quotation marks omitted).

6

To survive a motion to dismiss invoking Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations must be more than "labels and conclusion . . . . Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555; *see also id.* ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action" (quoting 5C Wright & A. Miller, Federal Practice and Procedure § 1216, 235–36 (3d ed. 2004)). A complaint will not survive Rule 12(b)(6) review where it contains "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Furthermore, "[w]hen a plaintiff alleges fraud or when 'the gravamen of the claim is fraud even though the theory supporting the claim is not technically termed fraud,' [Federal Rule of Civil Procedure] 9(b) requires that 'the circumstances constituting fraud be stated with particularity.'" *Haley v. Corcoran*, 659 F. Supp. 2d 714, 721 (D. Md. 2009) (quoting *Adams v. NVR Homes, Inc.*, 193 F.R.D. 243, 250 (D. Md. 2000); Fed. R. Civ. P. 9(b)). To satisfy this standard, plaintiffs "must, at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (internal quotation marks and citation omitted). "These facts are often referred to as the 'who, what, when, where, and how' of the alleged fraud." *Id.* (quoting *United States ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 384 (5th Cir. 2003)).

Finally, although pleadings of self-represented litigants must be accorded liberal construction, *see Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir.1978), liberal construction does not mean a court can ignore a clear failure to allege facts that set forth a cognizable claim, *see Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

Here, all of Plaintiff's claims must be dismissed because he has failed to allege facts that "state a claim to relief that is plausible on its face."[10] *Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted). With respect to his statutory claims, the Amended Complaint is devoid of any factual matter sufficient to state a claim for violation of the relevant statutes. Specifically, although Plaintiff alleges that Defendants violated the EFTA, that Act imposes liability on "financial institutions," *see* 15 U.S.C. § 1693h, which are defined by the statute as "a State or National bank, a State or Federal savings and loan association, a mutual savings bank, a State or Federal credit union, or any other person who, directly or indirectly, holds an account belonging to a consumer[.]" 15 U.S.C. § 1693a(8). An "account" is defined in turn as a "demand deposit, savings deposit, or other asset . . . established primarily for personal, family, or household purposes . . . ." 15 U.S.C. § 1693a(2). Plaintiff does not allege that any of the Defendants named in this action are "financial institutions" or that they maintain an applicable "account" on his behalf.

Additionally, Plaintiff's claim for violation of the FDCPA fails because the only allegation in the Complaint respecting any violation of this Act is that PHI "uses the mail and other instruments of interstate commerce to conduct its business." ECF No. 10 at ¶ 37. No other facts are alleged that would establish a violation of the FDCPA, for instance, that Defendants engaged in any conduct to harass, oppress, or abuse him, *see* 15 U.S.C. § 1692d, or that

---

[10] Because Plaintiff's claims are subject to dismissal, his request for injunctive relief, *see* ECF No. 10 at ¶¶ 42–48, is also denied.

Defendants made any false or misleading representation in connection with the collection of any debt, *see* 15 U.S.C. § 1692e. And with respect to Plaintiff's claim of violation of the CCPA, dismissal is warranted because, although Plaintiff mentions that Act in the introductory paragraph of the Amended Complaint, the Act is mentioned nowhere else in the Amended Complaint, other than to assert that Plaintiff is entitled to injunctive relief for a violation of it. ECF No. 10 at ¶¶ 43, 47. Noticeably absent from the Amended Complaint are any facts respecting any purported violation of that Act.

Dismissal of Plaintiff's common law claims is also warranted. With respect to Plaintiff's first claim, conversion, a plaintiff must prove two elements: (1) his right to possess the property; and (2) defendant's intentional taking of the property without authority or permission. *Froelich v. Erickson*, 96 F. Supp. 2d 507, 525–26 (D. Md. 2000), *aff'd sub nom.*, *Froelich v. Senior Campus Living*, LLC, 5 F. App'x 287 (4th Cir. 2001) (citing *Travel Committee v. Pan American World Airways, Inc.*, 603 A.2d 1301 (Md. Spec. App. 1992)). Notably, the Amended Complaint offers inconsistent accounts as to whether Defendants failed to return the EFT instrument to which Plaintiff alleges they have intentionally taken. *See* ECF No. 10 at ¶¶ 21, 27. But, even if Defendants failed to return the instrument itself, Plaintiff alleges in the Amended Complaint that Defendants refused to accept or honor the EFT instrument as legal tender, and, accordingly, *refused* to take dominion or control over it. *See Darcars Motors of Silver Spring, Inc. v. Borzym*, 841 A.2d 828, 836 (Md. 2004) ("At a minimum, a defendant liable of conversion must have 'an intent to exercise a dominion or control over the goods which is in fact inconsistent with the plaintiff's rights.'"). Because Plaintiff does not allege that Defendants had "intent to exert control over the property," *see id.*, his conversion claim fails.

Finally, Plaintiff's fraud claim also must be dismissed. Plaintiff's "naked assertion," *see Twombly*, 550 U.S. at 555, that Defendants "engaged in [an] unlawful and fraudulent act by threatening to disconnect electric service," ECF No. 10 at ¶ 23, is insufficient to satisfy even the liberal pleading standards under Rule 8(a), let alone the heightened pleading standard that must apply to fraud claims under Rule 9(b). A claim of common law fraud requires proof that:

> (1) . . . the defendant made a false representation to the plaintiff, (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth, (3) that the misrepresentation was made for the purpose of defrauding the plaintiff, (4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation.

*Ellerin v. Fairfax Sav., F.S.B.*, 652 A.2d 1117, 1123 (Md. 1995). Nowhere in the Amended Complaint does Plaintiff allege how any representations made to him by any Defendant was false, nor that any Defendant made any representation with knowledge of such falsity. Because Plaintiff has failed to "describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation," *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (internal quotation marks and citation omitted), his claim must be dismissed.

## III.   CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss the Amended

Complaint, ECF No. 12, is **GRANTED**, and this action is **DISMISSED** without

prejudice.[11] Defendants' Motions to Dismiss the original Complaint, ECF Nos. 6 & 8, are

**DENIED** as moot based on Plaintiff's filing of an Amended Complaint, ECF No. 10. A

separate Order follows.


Dated: June  10  , 2016

GEORGE J. HAZEL
United States District Judge

---

[11] Because the dismissal is without prejudice, if Plaintiff believes he can cure the deficiencies of his Amended Complaint, he may refile this action, so long as he first initiates a claim before the Maryland Public Service Commission.